IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALTO O'NEIL MCDONALD,
      Petitioner,

vs.                         Case No.:  3:18cv2056/RV/EMT

MARK S. INCH,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Alto O'Neil McDonald ("McDonald") commenced this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1). Respondent ("the State") filed an answer and relevant portions of the state court record (ECF No. 24). The court provided McDonald an opportunity to file a reply (*see* ECF No. 25), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases. It is

further the opinion of the undersigned that the pleadings and attachments before the court show that McDonald is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 24).[1]  McDonald was charged in the Circuit Court in and for Walton County, Florida, Case No. 2014-CF-257, with one count of Failure of Sex Offender to Register During the Month of His Birthday (Ex. A at 25). A jury found McDonald guilty as charged on December 8, 2014 (Ex. A at 145, Ex. B).  On January 20, 2015, the court sentenced McDonald to five (5) years in prison, with pre-sentence jail credit of 46 days (Ex. A at 175–80, Ex. C).

McDonald, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D15-770 (Ex. D).  The First DCA affirmed the judgment per curiam without written opinion on February 15, 2016 (Ex. I).  *McDonald v. State*, 184 So. 3d 522 (Fla. 1st DCA 2016) (Table).  The mandate issued March 2, 2016 (Ex. I).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with the State's answer (ECF No. 24).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

On November 8, 2016, McDonald filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. J at 10–39).  On January 4, 2017, the state circuit court struck the motion as facially insufficient, without prejudice to McDonald's filing an amended motion within sixty (60) days (*id.* at 55–58).  McDonald filed a timely amended motion (*id.* at 59–103).  On April 14, 2017, the circuit court struck the amended motion as facially insufficient, without prejudice to McDonald's filing a second amended motion within sixty (60) days (*id.* at 104–07).  McDonald filed a timely second amended motion (*id.* at 144–79).  The circuit court summarily denied the second amended Rule 3.850 motion on July 26, 2017 (*id.* at 180–93).  Petitioner appealed the decision to the First DCA, Case No. 1D17-3234 (Ex. L).  The First DCA affirmed per curiam without written opinion on July 10, 2018 (Ex. N). *McDonald v. State*, 248 So. 3d 1112 (Fla. 1st DCA 2018) (Table).  The mandate issued August 7, 2018 (Ex. N).

McDonald filed the instant federal habeas action on August 27, 2018 (ECF No. 1).

II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.

*See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct.

2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme

Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal
> judges are required to afford state courts due respect by overturning
> their decisions only when there could be no reasonable dispute that they
> were wrong.  Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal."  *Harrington*,
> *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding.  *See*

*Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable

application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*,

537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state

court decision based on a factual determination "will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, *Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claim.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v.*

*Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*

A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The federal court "lacks jurisdiction to entertain a federal claim on review of a state court judgment, if that judgment rests on a state law ground that is both independent of the merits of the federal claim and an adequate basis for the

court's decision." *Foster v. Chatman*, — U.S. —, 136 S. Ct. 1737, 1745, 195 L. Ed. 2d 1 (2016) (internal quotation marks and citation omitted).  Even where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Harris*, 489 U.S. at 264 n.10).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  *Id.*  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause for the default and prejudice resulting therefrom, or that the federal court's failure to reach

the merits of the claim would result in a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.* Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. *See McQuiggin v.*

*Perkins*, 569 U.S. 383, 399, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).  As the

Court stated in *Schlup*, "[a] court may consider how the timing of the submission

and the likely credibility of [a petitioner's] affiants bear on the probable reliability

of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also House v. Bell*, 547

U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review McDonald's claims.[2]

## IV.    MCDONALD'S CLAIMS

A.    Ground One:  "Trial counsel was ineffective for failing to move to strike or peremptory strike biased jurors."

McDonald contends defense counsel was ineffective for failing to strike three

jurors, William Deisler, Hansel Adams, and Gerald Szilvasy (ECF No. 1 at 6).

McDonald alleges the three jurors "demonstrated that they possessed the state of

mind which prevented the jurors from acting with partiality [sic]." (*id.*).  McDonald

asserts he presented this ineffective assistance of trial counsel ("IATC") claim to the

state courts on direct appeal and in the Rule 3.850 proceeding (*id.* at 6–7).

---

[2] For organizational reasons, the court is addressing McDonald's claims in a different order
than he presented them in his § 2254 petition and consolidating its discussion of his claims.

The State contends McDonald exhausted this IATC claim only with respect to Juror Hansel Adams (ECF No. 24 at 18–29).  The State argues that although McDonald presented the IATC claim with respect to all three jurors to the state circuit court in his second amended Rule 3.850 motion, McDonald expressly abandoned the claim with respect to jurors Deisler and Szilvasy on appeal to the First DCA (*id.*).  The State contends McDonald has not shown cause for the procedural default; therefore, McDonald's IATC claim for failure to strike jurors Deisler and Szilvasy is procedurally barred from federal review (*id.*).  With respect to the exhausted aspect of Ground One, i.e., defense counsel's failure to strike juror Adams, the State contends McDonald has not established that the state court's adjudication was contrary to or an unreasonable application of clearly established federal law, or that it rested upon an unreasonable determination of the facts (*id.* at 29–33).

        **1.**    **McDonald's IATC claim based upon counsel's failure to strike jurors Deisler and Szilvasy is procedurally barred from federal review**

The Florida Rules of Appellate Procedure provide that briefs are "not required" when a defendant appeals from the summary denial of a Rule 3.850 motion, but the defendant may serve an initial brief within 30 days of filing the notice

of appeal. *See* Fla. R. App. P. 9.141(b)(2)(C). When the defendant chooses to file a brief, only those claims which are raised and fully addressed on the merits are preserved for appellate review. *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *Cook v. State*, 638 So. 2d 134, 135 (Fla. 1st DCA 1994) (where defendant chose to file initial brief on appeal of summary denial of all claims presented in 3.850 motion, appellate court must only address the rulings asserted as error in defendant's initial brief).

In McDonald's second amended Rule 3.850 motion, he presented an IATC claim based upon counsel's failure to strike jurors Deisler, Szilvasy, and Adams (Ex. J at 146–52). The circuit court summarily denied the claim on the merits (*id.* at 182–85). McDonald appealed the decision, but in his initial brief he expressly stated he did not seek appellate review of the circuit court's denial of his IATC claim concerning defense counsel's failure to strike jurors Deisler and Szilvasy (*see* Ex. L at 3 n.2). Further, McDonald included no argument in his brief concerning defense counsel's failure to strike jurors Deisler and Szilvasy (*see id.* at 7–10). Having chosen to abandon any argument that the circuit court erred in summarily denying Ground One with respect to counsel's failure to strike jurors Deisler and Szilvasy, McDonald failed to invoke the state court's established appellate review process as

to those claims, and thus failed to exhaust them.  *See, e.g., Martin v. Sec'y, Dep't of Corr.*, No. 4:16cv179/WS/GRJ, 2019 WL 1319280, at *8 (N.D. Fla. Feb. 11, 2019), *Report and Recommendation Adopted by* 2019 WL 1319276 (N.D. Fla. Mar. 22, 2019) (unpublished but recognized as persuasive authority); *Owens v. Fla. Dep't of Corr. Sec'y*, No. 1:16cv254/WTH/EMT, 2018 WL 5794185, at *26 (N.D. Fla. May 1, 2018), *Report and Recommendation Adopted by* 2018 WL 5792820 (N.D. Fla. Nov. 5, 2018); *Ulland v. Comerford*, No. 5:15cv111/MW/EMT, 2016 WL 2909174, at *11–15 (N.D. Fla. Apr. 26, 2016), *Report and Recommendation Adopted by* 2016 WL 2886333 (N.D. Fla. May 17, 2016); *Bolling v. Jones*, No. 3:13cv473/MCR/CJK, 2015 WL 6769103, at *14 (N.D. Fla. Oct. 16, 2015), *Report and Recommendation Adopted by* 2015 WL 6758189 (N.D. Fla. Nov. 5, 2015).

Any future attempt to exhaust state remedies would be futile under Florida's procedural default doctrine, because a second appeal of the denial of a Rule 3.850 motion is unavailable, and any further attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as successive.  *See* Fla. R. Crim. P. 3.850(f).  Therefore, McDonald's IATC claim based upon defense counsel's failure to strike jurors Deisler and Szilvasy is procedurally defaulted.

McDonald did not allege cause for his procedural default, nor did he allege he is entitled to federal review under the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, McDonald is not entitled to federal review of his IATC claim based upon defense counsel's failure to strike jurors Deisler and Szilvasy.

### 2. McDonald is not entitled to federal habeas relief on his IATC claim based upon counsel's failure to strike juror Adams

This leaves McDonald's exhausted claim, i.e., defense counsel was ineffective for challenge juror Hansel Adams for cause or use a peremptory strike to remove him.

### a.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under *Strickland*, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances," and reasonableness is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 688. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001)).

If the record is not complete regarding counsel's actions, "then the courts should presume that what the particular defense lawyer did at trial. . . were acts that

some lawyer might do." *Jones*, 436 F.3d at 1293 (citing *Chandler*, 218 F.3d at 1314–15 n.15).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high.  *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).  To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding.  *Id.* (citation omitted).  And Petitioner

must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

b.      Federal Review of State Court Decision

As previously noted, McDonald presented this IATC claim in Claim I of his second amended Rule 3.850 motion (Ex. J at 146–52).  As relevant to juror Adams, McDonald alleged the following exchange demonstrated that Adams had a preconceived opinion about sex offenders and sex offender registration which would affect his ability to render a fair and impartial verdict:

> MR. ALLDREDGE [defense counsel]:  Do you share any of those feelings we just discussed?  Do you lean one way or the other, or how do you feel about that?
>
> PROSPECTIVE JUROR [Mr. Adams]:  Yeah. I've got an eight year old son, so that kind of stuff needs to be done in my opinion.
>
> MR. ALLDREDGE:  So you think they need to take a hard line on those types of offenses and cases?
>
> PROSPECTIVE JUROR:  Yes.

(Ex. J at 147).  McDonald contended it was apparent from the face of the record that a biased juror actually served on the jury (*id.* at 152).

In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the *Strickland* standard as the applicable legal standard (Ex. J at 181–82).  The state circuit court adjudicated this particular IATC claim as follows:

In his first claim, the defendant alleges his counsel was ineffective for "failing to challenge and/or move to peremptorily strike biased jurors."    The defendant alleges his counsel should have challenged "the selection of three biased jurors:  William Deisler, Hansel Adams and Gerald Szilvasy." . . The defendant alleges Mr. Hansel Adams was biased because he "stated he believed that sex offender registration needed to be done in his opinion and that law enforcement needed to take a hard line on those types of offenses and cases." . . .   The defendant alleges such responses by . . . Mr. Hansel Adams . . . automatically constitute preconceived opinions of which such jurors could not overcome.  The defendant also alleges such jurors did not "recede" from their preconceived opinions.

The defendant does not establish either prong of <u>Strickland</u>.  For example, the defendant does not show that a valid basis existed upon which counsel could have challenged such jurors.  The defendant does not show deficient performance automatically merely because he believes a juror's response during voir dire constitutes an automatic "preconceived opinion," especially considering such jurors' responses clearly indicate they had been rehabilitated or were not biased.  Indeed, the record refutes the defendant's allegation that such jurors were "biased." . . .   Regarding Mr. Hansel Adams, he answered "yes" when asked if a hard line needed to be taken in failure to register allegations or underlying cases.   Such answer does not express any definite "preconceived opinion" for which the juror could not be impartial or render a decision based on the law presented at trial.  As a result, the defendant does not demonstrate a valid basis existed upon which counsel could have challenged such jurors.

The defendant also does not establish prejudice.  The defendant does not show prejudice automatically merely by stating his conclusory belief that "the nature of the juror's bias should be patent from the face of the record."  In fact, the record refutes such an allegation because such jurors' answers during voir dire show . . . Mr. Hansel Adams did not express a clear "preconceived opinion."  To the extent the defendant alleges his counsel was ineffective for failing to raise or preserve for

cause challenge regarding such jurors, the record refutes the defendant's claim that the jurors were biased as described above. As a result, the defendant does not show any reasonable probability that the result of the proceeding would have been different. Therefore, the instant claim is denied.

(Ex. J at 182–85) (footnotes omitted). In McDonald's initial brief on appeal of the circuit court's decision, he argued error with respect to the court's adjudication of his IATC claim with respect to juror Adams (Ex. L at 3–4, 6, 7–10). The First DCA affirmed the circuit court's decision without written opinion (Ex. N).

Where the relevant state court decision on the merits does not come accompanied with the state court's reasons, the federal court should "look through" the unexplained decision to the last related state court decision that does provide a relevant rationale. *See Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018). The federal court should then presume that the unexplained decision adopted the same reasoning. *Id.*

A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause. *See Ross v. Oklahoma*, 487 U.S. 81, 85–86, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988). To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited **actual bias** by showing either an express admission of bias or facts demonstrating such a close

connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (emphasis added); *see also Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 945, 71 L. Ed. 2d 78 (1982). The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).

The Supreme Court has upheld a trial court's seating of a juror even where the juror gave conflicting or ambiguous answers during voir dire about his ability to be impartial. *See, e.g., Patton v. Yount*, 467 U.S. 1025, 1038–40, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984); *Murphy v. Florida*, 421 U.S. 794, 801–03, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975). The Supreme Court explained in *Yount*:

> The testimony of each of the three challenged jurors is ambiguous and at times contradictory. This is not unusual on voir dire examination, particularly in a highly publicized criminal case. It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently.

467 U.S. at 1038–39.  Further, the question of whether a prospective juror is biased is "largely one of demeanor," and a prospective juror's demeanor during voir dire may make clear what otherwise seems ambiguous on the face of a transcript.  *See id.* at 1038 & n.14.

Under Florida law, the test "for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court."  *Lusk v. State*, 446 So. 2d 1038, 1041 (Fla. 1984).  The trial court must grant a party's motion to strike a prospective juror for cause if there is "any reasonable doubt" as to the juror's impartiality.  *Singer v. State*, 109 So. 2d 7, 23 (Fla. 1959).

The transcript of jury selection was part of the state court record (*see* Ex. J at 496–541).  To provide context to this IATC claim, the court will include a description of not only juror Adams' responses to voir dire questions, but portions of the other prospective jurors' responses.

The prosecutor asked the prospective jurors whether any of them knew McDonald, and Ms. Sefo stated, "I do know of him and about him" (*id.* at 506).  McDonald apparently stood up, and the court told him to "have a seat," and that he would have an opportunity to comment during a bench conference (*id.*).  Ms. Sefo

later stated her daughter was a victim of a sex crime, and she (Sefo) did not believe that the perpetrator received a sufficiently harsh prison sentence (*id.* at 518–19).  Ms. Sefo stated she would have difficulty setting aside her negative emotions resulting from her daughter's case (*id.* at 519–20).

Mr. Melson stated his sister and two cousins were victims of unreported sex crimes (Ex. J at 520–21).  Melson stated he did not believe he could set his feelings aside and sit as a juror (*id.* at 521).  Mr. Melson also stated that his "beliefs" would make it difficult for him to be unbiased (*id.* at 530–31).  He stated that if someone had been convicted of a sex crime, he would have trouble deciding a case in that person's favor (*id.* at 531).  Ms. Sefo agreed (*id.*).

Ms. Rogers stated her son was a victim of sexual molestation, but it would not affect her ability to sit as a juror (Ex. J at 520).  Mr. Espinoza stated he was studying law enforcement in school (*id.* at 526–27).  Mr. Siples stated he would have difficulty being unbiased or rendering a decision in a defendant's favor even if the defendant was only charged with failing to register as a sex offender, not the underlying sexual offense itself (*id.* at 530–32).

At that point, the trial court asked all of the prospective jurors if they could decide the case based upon only the evidence and the law:

THE COURT:  Let me ask all of you this.  If you serve on the jury, all of us come in with different backgrounds, different feelings on things, different views, but I guess what both lawyers want you to assure them is that you can set aside what you come in here with and decide this case based on the evidence and the law and what he's charged with today and that only.  Can all of you assure me that you can do that?  Everybody said yes except—the ones that can't, raise your hand.  The same.  Just Ms. Sefo?

PROSPECTIVE JUROR [Ms. Sefo]:  Uh-huh.

THE COURT:  And Mr. Melson?

PROSPECTIVE JUROR [Mr. Melson]:  Yes, sir.

THE COURT:  Mr. Siples, can you set that aside?

PROSPECTIVE JUROR [Mr. Siples]:  Yeah, I can set it aside with just the evidence presented.

THE COURT:  Okay.  Go ahead, Mr. Alldredge.

(Ex. J at 532–33).  Defense counsel then questioned juror Adams, who is the subject of the instant IATC claim:

MR. ALLDREDGE:  Thank you.  Mr. Adams, we haven't heard much from you yet.  What do you do for a living?

PROSPECTIVE JUROR:  I work for the school district.

MR. ALLDREDGE:  And did you grow up in this area?

PROSPECTIVE JUROR:  No, I did not.

MR. ALLDREDGE:  Where did you grow up?

> PROSPECTIVE JUROR:  I moved here from Alabama.
>
> MR. ALLDREDGE:  Do you share any of those feelings we just discussed?  Do you lean one, way or the other, or how do you feel about that?
>
> PROSPECTIVE JUROR:  Yeah.  I've got an eight year old son, so that kind of stuff needs to be done in my opinion.
>
> MR. ALLDREDGE:  So you think they need to take a hard line on those types of offenses and cases?
>
> PROSPECTIVE JUROR:  Yes.
>
> . . . .
>
> MR. ALLDREDGE;  Okay.  Let me ask you this finally:  The State is going to ask you to find a guilty verdict.  And when we're done I would ask you to find a not guilty verdict.  Is there anyone who feels like they just can't for emotional reasons they don't want to disappoint family or friends, for some reason they just feel like they could not enter a not guilty verdict?
>
> This is your chance to tell us if you have those strong of feelings for any reason.  All right.  Thank you very much.

(Ex. J at 532–34).  The clerk's minutes of jury selection affirm that none of the prospective jurors responded to Attorney Alldredge's last question (i.e., whether anyone felt they could not enter a not guilty verdict) (Ex. A at 148–49).

Attorney Alldredge struck Ms. Sefo and Mr. Melson for cause (Ex. J at 537, 538).  The prosecutor exercised peremptory challenges as to Mr. Hamel, Ms. Peters, and Ms. Jackson (*id.* at 537).  Attorney Alldredge exercised peremptory challenges

as to Ms. Rogers, Mr. Espinoza, and Mr. Siples (*id.* at 538).  The prosecutor and Attorney Alldredge tendered (*id.*), and the court inquired of McDonald whether he was satisfied with the selected jurors:

> THE COURT:  Mr. McDonald, you participated in this jury selection.  Are you satisfied with this group of jurors?
>
> THE DEFENDANT:  Yes, sir.

(Ex. J at 539).

McDonald and Attorney Alldredge had the ability to evaluate the credibility and demeanor of the potential jurors.  Attorney Alldredge reasonably could have believed that even though juror Adams believed that a "hard line" needed to be taken in enforcing sex offender registration requirements, Adams did not have a preconceived opinion about McDonald's guilt or innocence, and he could be fair and impartial.  Further, unlike jurors Sefo, Melson, and Siples, juror Adams did **not** indicate he could not set aside his impressions and opinions and decide the case based solely on the evidence and the law; nor did Adams indicate he could not render a verdict in McDonald's favor.  McDonald himself apparently believed that juror Adams would impartially consider the evidence, as evidenced by his telling the trial court he was satisfied with the six jurors, including Adams.

McDonald has not demonstrated that the state court's determination that he failed to satisfy both prongs of the *Strickland* standard was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, McDonald is not entitled to federal habeas relief on the exhausted part of Ground One, i.e., Attorney Alldredge's failure to strike or challenge juror Adams. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019) ("So long as any fairminded jurist could agree with the state court's ruling, we must deny federal habeas relief."); *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("[I]f some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied.").

> B.    <u>Ground Two:  "Trial counsel was ineffective for failing to insure [sic] that Defendant's stipulation which was tantamount to a partial guilty plea was knowingly and voluntarily made."</u>
>
> <u>Ground Three:  "Trial counsel was ineffective for failing to properly move for judgment of acquittal."</u>
>
> <u>Ground Five:  "Trial counsel was ineffective for failing to object to the trial court advising the jury to consider evidence presented after the defense had rested."</u>

McDonald asserts he presented each of these claims on direct appeal, in his Rule 3.850 motion, and on appeal of the circuit court's denial of his Rule 3.850 motion (ECF No. 1 at 8–10, 12–13).

The State argues that although McDonald presented each of these IATC claims in his second amended Rule 3.850 motion, McDonald expressly abandoned all of them on appeal to the First DCA (ECF No. 24 at 34–38, 45–48).  The State contends McDonald has not shown cause for the procedural default; therefore, McDonald's IATC claims are procedurally barred from federal review (*id.*).

The state court record demonstrates that McDonald presented these IATC claims as Claims II, III, and V in his second amended Rule 3.850 motion (Ex. J at 153–62, 167–71).  McDonald chose to file an initial brief in his post-conviction appeal to the First DCA (Ex. L).  In his brief, McDonald expressly stated he did not seek appellate review of the lower court's denial of claims II, III, and V; and he even cited *Watson v. State*, 975 So. 2d 572 (Fla 1st DCA 2008) (when the defendant chooses to file a brief, only those claims which are raised and fully addressed on the merits are preserved for appellate review) (*see* Ex. L at 2 n.1).  Further, in the body of his initial brief, McDonald did **not** include any argument with respect to the IATC claims presented here in Grounds Two, Three, and Five (*see id.* at 7–15).  Having

chosen to abandon any argument that the circuit court erred in summarily denying Grounds Two, Three and Five, McDonald failed to invoke the state court's established appellate review process as to those claims and thus failed to exhaust them.

As discussed *supra*, any future attempt to exhaust state remedies would be futile under Florida's procedural default doctrine; therefore, McDonald's IATC claims asserted in Grounds Two, Three, and Five are procedurally defaulted. McDonald did not allege cause for his procedural default, nor did he allege he is entitled to federal review under the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, McDonald is not entitled to federal review of Grounds Two, Three, and Five.

C.    Ground Four:  "Trial counsel was ineffective for failing to investigate factual basis for complete defense."

McDonald contends Attorney Alldredge failed to investigate and discover the fact that he (McDonald) attempted to register with the Walton County Sheriff's Office on January 28, 2014, but was informed that the office was closed due to an ice storm (ECF No. 1 at 11). McDonald states he presented this IATC claim on direct appeal and in the Rule 3.850 proceedings (*id.* at 11–12).

The State concedes McDonald presented this claim as Claim IV of his second amended Rule 3.850 motion, and that he presented the issue in his post-conviction appeal to the First DCA (ECF No. 24 at 39–40).  The State contends McDonald has not demonstrated that the state court's adjudication of the IATC claim was contrary to or an unreasonable application of *Strickland* (*id.* at 39–45).

      1.     Clearly Established Federal Law

The *Strickland* standard, set forth *supra*, governs this claim.

      2.     Federal Review of State Court Decision

McDonald presented this IATC claim as Ground IV of his second amended Rule 3.850 motion (Ex. J at 163–66).  The state circuit court adjudicated the claim as follows:

> ln his fourth claim, the defendant alleges his counsel was ineffective for failing to investigate a "factual basis for complete defense."  The defendant also alleges his "counsel failed to investigate and discover that Defendant initially attempted to register with the Walton County Sheriff's Office on January 28, 2014, and was informed . . . that the office was closed due to the ice storm that was occurring at that time."  The defendant appears to allege that such information "is a complete defense to the crime of failure by a sexual offender to comply with registration requirements" because he attempted "to comply but was misinformed or otherwise prevented from complying by law enforcement."
>
> However, the record refutes the defendant's claim.  The defendant testified at trial that he attempted to register at the Walton

County Sheriff's Office during "the ice storm."[FN 45]  Mr. Fred
Stanley testified at trial that the defendant was required to register in
February, which is the month of his birthday.[FN 46]  Mr. Fred Stanley
also testified the Walton County Sheriff's Office was closed for an ice
storm, which may have occurred in January or February 2014.[FN 47]
Mr. Fred Stanley testified he did not review the Walton County
Sheriff's Office surveillance video to determine whether the defendant
arrived at the Walton County Sheriff's Office administrative building
to register during the ice storm.[FN 48]  Considering such information,
the record is clear counsel investigated the defense as alleged by the
defendant.  Therefore, the instant claim is denied.[FN 49].

> [FN 45:  Trial Testimony Tr. 60–62, Dec. 8, 2014 (Attach.
> 3).]

> [FN 46:  Trial Testimony Tr. 9–10, Dec. 8, 2014 (Attach.
> 3).]

> [FN 47:  Trial Testimony Tr. 11–13, 16–17, Dec. 8, 2014
> (Attach. 3).]

> [FN 48:  Trial Testimony Tr. 16, Dec. 8, 2014 (Attach. 3).]

> [FN 49:  The court previously granted the defendant leave
> to file an amended motion for postconviction relief;
> therefore, the court declines to grant the defendant an
> additional opportunity to amend.].

(Ex. J at 188–89) (footnote references to second amended Rule 3.850 motion

omitted).  The First DCA affirmed the circuit court's decision without written

opinion (Ex. N).

The trial transcript is part of the state post-conviction record (Ex. J, Order Denying the Defendant's *Pro Se* Second Amended Motion for Postconviction Relief, Attachs. 3 and 4). Deputy Fred Stanley testified he worked for the Walton County Sheriff's Office and was responsible for registering sex offenders in Walton County from June of 2013 through April of 2014 (Attach. 3, Trial Trans. pp. 3–4). Deputy Stanley testified the office for registering sex offenders was in the Sheriff's Office administrative building and accessible to the general public (*id.*, p. 5). Stanley testified that a person wishing to register would follow the following procedure:

> They would come in, sign in with the receptionist. She would notify me that someone was there to do the registration. There's a form that we fill out electronically on the computer. We would go through those steps, make any changes to the information. At that point it would be printed, a hard copy would be retained in a hard file. It would be submitted electronically to FDLE and the defendant would be offered a copy as well for their records.

(Trial Trans. p. 5). Deputy Stanley testified the sex offender registration office was open 8:00–5:00 Monday through Friday (*id.*, p. 6). Deputy Stanley testified he knew McDonald, because McDonald had registered with Stanley as a sex offender in the past (*id.*, p. 7). Deputy Stanley testified McDonald was required to register twice a year, once during his birth month, which was February, and the second time during the sixth month after his birth month, which was August (*id.*, pp. 8–9). Stanley

testified McDonald registered on September 11, 2013, and the written registration form which McDonald completed on September 11, 2013, expressly stated that McDonald's next registration month was February of 2014 (*id.*, p. 9).

Deputy Stanley testified that the Sheriff's Office was not shut down during normal business hours at any time during the month of February of 2014 (Trial Trans., p. 10). Deputy Stanley testified McDonald did not register in Walton County or any Florida county in February of 2014 (*id.*, pp. 10–11).

On cross-examination, Attorney Alldredge elicited the following testimony from Deputy Stanley: (1) he possibly missed work during the month of February of 2014; (2) there was an ice storm or other inclement weather during February of 2014 that "caused some days off"; (3) it was possible that McDonald came to the Sheriff's Office on one of those days; and (4) Stanley did not know if anyone was at the Sheriff's Office to assist McDonald on a day that he (Stanley) was not there (Trial Trans., p. 12). Deputy Stanley also testified that there was video surveillance in the Sheriff's Office which would record a person's presence, but he did not review any video to determine if McDonald had appeared in February of 2014 (*id.*, pp. 15–16).

On re-direct examination, Deputy Stanley acknowledged that the ice storm may have been in January of 2014 (Trial Trans., p. 17). Stanley authenticated a copy

of the Sheriff's Office visitor's logs for February 3–27, 2014, and the log was admitted into evidence (*id.*, pp. 17–20).

Nyleah Clark, a records supervisor with the Sheriff's Office, testified that everyone who entered the doors of the Sheriff's Office was required to sign the visitor's log (Trial Trans., pp. 25–32).

Attorney Alldredge presented testimony from Felicia Steinke.  Ms. Steinke testified she worked for McDonald from November of 2013 through July of 2014 (Trial Trans., p. 35).  Ms. Steinke testified that one afternoon during the first two weeks of February of 2014, she drove McDonald to the Walton County Sheriff's Office (*id.*, pp. 37–39).  Ms. Steinke testified McDonald told her he was going to register as a sex offender (*id.*, p. 38).  Steinke testified she waited in the car while McDonald was in the Sheriff's Office for approximately 20 minutes (*id.*, pp. 38–39).  On cross-examination, Ms. Steinke testified that when she drove McDonald to the Sheriff's Office, it was "after the big storm," which occurred in January (Trial Trans., pp. 41, 43).

Christina Robbins testified she drove McDonald to the Sheriff's Office in February of 2014, because he said he needed to register as a sex offender (Trial Trans., pp. 49–50).  Ms. Robbins testified she stayed in the car while McDonald

went into the Sheriff's Office (*id.*, p. 51). Ms. Robbins testified that when McDonald returned to the car, he told her he would have to come back (*id.*, p. 52).

McDonald himself testified that twice during February of 2014, he went to the Sheriff's Office to register as a sex offender (Trial Trans., p. 61). McDonald testified Ms. Steinke drove him to the Sheriff's Office the first time, and Ms. Robbins drove him the second time (*id.*, p. 64). McDonald testified the first time was during an ice storm (*id.*, pp. 61–62). He testified he entered the Sheriff's Office, and the receptionist told him everyone was gone for the day, so he left (*id.*). McDonald testified he returned to the Sherriff's Office a few days later (*id.*, p. 65). McDonald testified that a deputy subsequently came to his house and "did the paperwork there" and said he was "good to go" (*id.*).

On cross-examination, McDonald testified he had been registering twice a year for 24 years (Trial Trans., p. 66). McDonald admitted he had previously been convicted of two felonies (*id.*, p. 67). McDonald also admitted that in 2006, he pleaded guilty to failing to register as a sex offender (*id.*, pp. 68–69). McDonald testified he assumed he had satisfied the registration requirement when the deputy came to his house and said he was "good to go" (*id.*, p. 70). McDonald admitted he

did not register with anyone at the Sheriff's Office in February of 2014, but explained, "There wasn't anybody there." (*id.*, p. 72).

On re-direct examination, McDonald again explained the reason he did not register at the Sheriff's Office:

> Nobody was there. One time they said everybody was gone because of the ice storm and the next time I went in there they said ain't nobody [sic] there, that you got to come back later. That's when I come back later, it was the ice storm and they weren't there. And then a deputy come out to the house and told me I was good to go, so I went on to work.

(Trial Trans., p. 74).

The prosecutor called Crystal Bailey as a rebuttal witness. Ms. Bailey testified she previously worked for McDonald (Trial Trans., p. 80). Ms. Bailey testified McDonald asked her to provide a statement that she was in the vehicle when McDonald was driven to the Sheriff's Office to register (*id.*, pp. 80–81). Ms. Bailey testified she did not live in Florida until April 29, 2014 (*id.*, p. 81).

Considering the fact that Attorney Alldredge presented evidence that McDonald attempted to register with Sheriff's Office but was informed the office was closed due to an ice storm, the state court reasonably concluded McDonald failed to satisfy the deficient performance prong of the *Strickland* standard. McDonald is not entitled to federal habeas relief on Ground Four.

D.  <u>Ground Seven</u>:  "The trial court administered misleading jury instructions which resulted in fundamental error."

<u>Ground Eight</u>:  "Fundamental error occurred when the trial court read a stipulation to the jury that was substantially different from the language specifically agreed to by Defendant."

In the body of Ground Seven, McDonald alleges **trial counsel was ineffective because** the trial court provided a "circular, misleading and confusing" jury instruction regarding the State's burden of proving the "sexual offender" element of the failure to register charge (ECF No. 1 at 15) (emphasis added).  McDonald alleges the trial court instructed the jury that the State was required to prove beyond a reasonable doubt that McDonald had agreed or stipulated he had been convicted as a sexual offender, but the court then instructed the jury that it should consider the sexual offender element as proven by agreement of the parties (*id.*).

In the body of Ground Eight, McDonald alleges **trial counsel was ineffective because** the trial court read a stipulation to the jury which was substantially different from the language McDonald specifically agreed to (ECF No. 1 at 17) (emphasis added).

McDonald states he exhausted his state court remedies with respect to both claims by presenting them on direct appeal, in his Rule 3.850 motion, and in the post-conviction appeal (*see* ECF No. 1 at 16–18).

The State contends Grounds VII and VIII are procedurally barred from federal review regardless of whether McDonald presents them as claims of trial court error or as IATC claims (ECF No. 24 at 54–62).   The State argues that McDonald did not present any of these claims on direct appeal (*id.*).   Further, McDonald presented only claims of **trial court error** in his Rule 3.850 motion with respect to the jury instructions and the reading of the stipulation, but McDonald expressly abandoned them in his initial brief in the post-conviction appeal (*id.*).   The State contends McDonald now attempts to convert his claims of trial court error into IATC claims, but he did not exhaust IATC claims in the state courts (*id.*).   The State argues that any attempt by McDonald to return to state court to exhaust the IATC claims would be futile, because they would be subject to dismissal as impermissibly successive (*id.*).   The State contends that notwithstanding McDonald's failure to exhaust the IATC claims, he is not entitled to federal habeas relief, because they are meritless (*id.*).

The record confirms the State's procedural bar argument. Contrary to McDonald's assertions, on direct appeal he did not present a claim of trial court error, or a related IATC claim, with respect to either the jury instructions or the court's reading of the parties' stipulation (*see* Ex. D).  Additionally, in McDonald's

second amended Rule 3.850 motion, he did not present an IATC claim with respect to the jury instructions or the trial court's reading of the stipulation (*see* Ex. J at 144– 79). McDonald **did** present claims of **trial court error** with respect to the jury instructions and the court's reading of the stipulation in Claims VII and VIII of his second amended Rule 3.850 motion (*see* Ex. J at 174–77), but he then expressly abandoned the issues in his initial brief in the post-conviction appeal (*see* Ex. L at 2 n.1, 7–15). Therefore, whether presented as claims of trial court error or IATC claims, Grounds Seven and Eight are procedurally defaulted.

McDonald does not allege cause for the procedural default. Likewise, he has not alleged the existence of new evidence that supports a colorable claim of his factual innocence of the failure-to-register charge. Therefore, McDonald is not entitled to a federal merits review of Ground Seven or Ground Eight either as an IATC claim or a claim of trial court error.

E.   Ground Six:  "Cumulative effect of trial counsel's errors."

McDonald alleges the cumulative effect of trial counsel's alleged errors deprived him of effective assistance of counsel and a fair trial (ECF No. 1 at 14). McDonald states he presented this claim on direct appeal and in the Rule 3.850 proceedings (*id.* at 14–15).

The State concedes that McDonald presented this claim as Claim VI of his second amended Rule 3.850 motion, and he argued the issue in his initial brief in the post-conviction appeal (ECF No. 24 at 48–50). The State contends the Supreme Court has not held that distinct constitutional claims may be cumulated to grant habeas relief (*id.* at 50). The State further contends that even if McDonald's claim is cognizable, he has not shown that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 50–53).

The state court record shows that McDonald presented this claim as Claim VI of his second amended Rule 3.850 motion (Ex. J at 172–73). The circuit court adjudicated the claim as follows:

> In his sixth claim, the defendant alleges his counsel's multiple errors entitle him to relief. However, an allegation of cumulative error is without merit if all of the underlying claims are meritless, procedurally barred, or insufficient under <u>Strickland</u>. <u>Vinning v. State</u>, 827 So. 2d 201,219 (Fla. 2002). As discussed above, the defendant's amended claims are insufficient under <u>Strickland</u>, refuted by the record, or legally insufficient. Therefore, the instant claim is denied.

(Ex. J at 191) (footnotes omitted). In McDonald's initial brief to the First DCA, he argued that the First DCA should reverse the circuit court's denial of Claim VI if the

appellate court reversed the circuit court's denial of Claims I and IV (Ex. L at 6, 14). The First DCA affirmed the circuit court's decision without written opinion (Ex. N).

The cumulative error doctrine provides that the aggregation of non-reversible errors "can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) (citing *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012)). The federal court must first address the validity of each of the petitioner's claims individually and then examine any errors in the aggregate and in light of the trial as a whole. *Id.* "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n. 26, 104 S. Ct. 2039, 80 L .Ed. 2d 657 (1984). Where there is no actual error, the cumulative-error claim has no merit. *Insignares*, 755 F.3d at 1284 (citing *Morris*, 677 F.3d at 1132).

For the reasons discussed *supra*, this court has found no actual error with respect to any of the claims subject to federal habeas review (i.e., those that are not procedurally barred). In the absence of any actual error, the state court reasonably denied McDonald's "cumulative effect" claim.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22nd day of October 2019.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**